**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JEROME T. BROOKS, ) | CASE NO. 4:07-CV-02162 |
| ) | |
| Petitioner, ) | |
| ) | JUDGE SARA LIOI |
| v. ) | |
| ) | MAGISTRATE JUDGE GREG WHITE |
| MICHELE EBERLIN, Warden, ) | |
| ) | |
| Respondent. ) | **REPORT & RECOMMENDATION** |

Petitioner, Jerome T. Brooks ("Brooks"), challenges the constitutionality of his conviction in the case of *State v. Brooks*, Mahoning County Court of Common Pleas Case No. 02-CR-843. Brooks, *pro se*, filed a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on July 18, 2007, with the United States District Court for the Northern District of Ohio. On March 14, 2008, Respondent Michele Eberlin ("Respondent") filed her Answer/Return of Writ. (Doc. No. 14.) Brooks filed his Traverse on April 7, 2008. (Doc. No. 15.) In an order issued May 20, 2008, Respondent was instructed to file a Supplemental Answer. (Doc. No. 16.) Respondent filed her Supplemental Answer on June 17, 2008. (Doc. No. 19.) Brooks proceeded to file a Supplemental Traverse on July 14, 2008. (Doc. No. 20.) This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. For reasons set forth in detail below, it is recommended that Brooks's petition be conditionally GRANTED.

## I.  Procedural History

**A.    Conviction**

The Mahoning County Grand Jury charged Brooks with one count of felonious assault, a felony of the second degree, in violation of Ohio Revised Code ("O.R.C.") § 2903.11(A)(2)(D) together with a firearm specification.  (Doc. No. 14, Exh. 1.)

Brooks, represented by counsel Jeffrey Limbian, pled "not guilty" and the matter proceeded to trial by jury.  On November 14, 2002, Brooks was found guilty as charged.  (Doc. No. 14, Exh. 2.)  On December 5, 2002, the trial court sentenced Brooks to eight years of incarceration for felonious assault and three years incarceration for the firearm specification. (Doc. No. 14, Exh. 3.)  The sentences were ordered to be served consecutively.  *Id*.

**B.    Direct Appeal**

On December 30, 2002, Brooks, represented by new counsel Damian Billak, filed a timely notice of appeal with the Court of Appeals for the Seventh Appellate District ("state appellate court").  (Doc. No. 19-2.)  On November 4, 2003, Brooks filed a brief in support and raised the following assignments of error:

> 1.  Appellant was denied due process and the liberties protected by Ohio Const. Art. I § 1, 2, 10 and 16 because his conviction for felonious assault and the accompanying firearm specification is against the manifest weight of the evidence.
>
> 2.  The trial court erred by imposing the maximum sentence upon appellant and by failing to state in the record the requisite findings pursuant to Ohio Revised Code 2929.14(C) and 2929.19(B).

(Doc. No. 14, Exh. 4.)

On June 15, 2004, the state appellate court affirmed both the conviction and the sentence. (Doc. No. 14, Exh. 6.)  On June 24, 2004, the United States Supreme Court issued its decision in

2

*Blakely v. Washington*, 542 U.S. 296 (2004) striking down a sentencing scheme as a violation of the Sixth Amendment right to trial by jury where state judges were permitted to make findings of fact in order to justify imposing a sentence beyond the statutory maximum.

On July 29, 2004, Brooks, through counsel, filed a timely Notice of Appeal with the Supreme Court of Ohio and raised the following proposition of law:

> Any findings necessary to raise a sentence above the statutorily mandated term of imprisonment must be made by a jury, not the trial judge.

(Doc. No. 14, Exh. 7.)

On October 27, 2004, the Supreme Court of Ohio dismissed the appeal as not involving any substantial constitutional question. (Doc. No. 14, Exh. 9.)

**C.    Post-Conviction Relief**

On November 26, 2004, Brooks, *pro se*, filed a "Petition for Declaratory Judgment Pursuant to Civ. R. 60(B)[,] O.R.C. 2721.03[,] and/or Injunctive Relief" with the state appellate court. (Doc. No. 14, Exh. 10.) In his petition, Brooks alleged that his sentence violated the United States Supreme Court's holding in *Blakely*. *Id*. On January 11, 2005, the state appellate court dismissed the petition stating that it lacked original jurisdiction under the Ohio Constitution. (Doc. No. 14, Exh. 11.)

On February 2, 2005, Brooks filed a petition to vacate or set aside his sentence with the trial court, which contained a challenge to his sentence based on *Blakely*. (Doc. No. 14, Exh. 17.) On April 15, 2005, the trial court appointed counsel to represent Brooks and ordered the state to file a memorandum in response to Brooks's petition. (Doc. No. 14, Exh. 18.) On May 31, 2005, the trial court overruled the petition and found that *Blakely* was inapplicable. (Doc. No. 14, Exh. 21.) On June 22, 2005, Brooks filed an appeal with the state appellate court. (Doc.

3

No. 14, Exhs. 22 & 23.) Almost two years later, on May 14, 2007, the state appellate court affirmed the trial court's decision finding that the felony sentencing issues that were resolved in *State v. Foster*, 109 Ohio St.3d, 2006-Ohio-856, 845 N.E.2d (Ohio 2006) do not apply in postconviction relief proceedings.[1] (Doc. No. 14, Exh. 27.) The state appellate court further found that Brooks "could have raised the *Blakely* issues in his direct appeal to the Ohio Supreme Court, as did dozens of other criminal defendants during that time period who successfully had their sentences overturned." *Id*. The state court reasoned that because Brooks could have raised his *Blakely* claims on direct appeal, he was barred from raising them in postconviction proceedings.[2] *Id*. It appears that no appeal of this decision to the Ohio Supreme Court was perfected.

On February 16, 2006, while Brooks was waiting for a decision from the state appellate court regarding his petition to set aside his sentence, he attempted to reopen his direct appeal by filing a Motion to Reopen pursuant to Civil Rule 52(B).[3] (Doc. No. 14, Exh. 12.) Brooks alleged that his motion was filed in response to an order of the state appellate court dated November 17, 2005. *Id*. On March 3, 2006, the state appellate court dismissed the motion as "improperly filed in a closed case." (Doc. No. 14, Exh. 13.) In addition, the court stated that it had not issued an order on November 17, 2005. *Id*. On April 3, 2006, Brooks filed a notice of

---

[1] As discussed in greater detail below, in *Foster*, the Ohio Supreme Court applied *Blakely* to Ohio's sentencing statutes and found portions thereof to be unconstitutional. 845 N.E.2d at the syllabus.

[2] Respondent concedes that the state appellate court was mistaken and that Brooks did indeed raise a *Blakely* claim before the Supreme Court of Ohio. (Doc. No. 19.)

[3] Applications to reopen an appeal in Ohio are actually governed by Ohio App. Rule 26(B).

appeal with the Supreme Court of Ohio challenging the state appellate court's decision of March 3, 2006. He alleged that "the trial court committed plain error when [it] made specific factual findings when sentencing appellant to prison for more than the minimum sentence when such factual findings must be made by a jury." (Doc. No. 14, Exhs. 14 & 15.) On July 5, 2006, the Supreme Court of Ohio dismissed Brooks's appeal as not involving any substantial constitutional question. (Doc. No. 14, Exh. 16.)

On August 21, 2007, Brooks filed a motion for judicial release which was denied by the trial court on October 18, 2007. (Doc. No. 14, Exh. 28.)

Brooks claims that a March 7, 2007 decision of the Supreme Court of Ohio vacated the decision of the state appellate court based on *Blakely*. (Doc. No. 1.) He further states that the state appellate court proceeded to again affirm the trial court's sentence and that a subsequent appeal to the Supreme Court of Ohio was refused by the Clerk's Office as untimely. *Id*. The docket contains no record of such decisions. (Doc. No. 19-2.)

**D.      Federal Habeas Petition**

On July 18, 2007, Brooks filed a Petition for Writ of Habeas Corpus and asserted the following grounds for relief:

> GROUND ONE: The trial court committed plain error when the trial court made specific factual findings when sentencing petitioner to prison for more than the minimum sentence when such factual findings must be made by a jury.
>
> GROUND TWO: The trial court violated petitioner's Fifth, Sixth and Fourteenth Amendment [rights].

(Doc. No. 1.)

## II. Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, factual determinations made by state courts "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002).  The state appellate court summarized the facts underlying Brooks's conviction as follows:

> During the afternoon of August 9, 2002, Robert Bell went to the Augusta Market in Youngstown with his ex-wife.  While he was there, he ran into appellant.  Bell and appellant were acquaintances and both frequented the Augusta Market.  Appellant told Bell to tell his ex-girlfriend, Tomika Gulley, that he wanted to see his baby.  Specifically, appellant told Bell, "'Tell that bitch I want to see my baby.'"  (Tr. 24).  Apparently, Bell and Miss Gulley had been spending some time together.  Appellant and Bell exchanged words.  While Bell was outside in his car, appellant pulled up to the side of Bell's car and showed him a sawed-off shotgun. Appellant then repeated, "You hear what I said?  I told you, 'Tell that bitch I want to see my baby.'"  (Tr. 24-25).  Bell told appellant he better leave.  Appellant then drove away and Bell followed after him.  However, Bell's ex-wife told him she did not have time for these antics, so he stopped following appellant.
>
> Later that day, around 7:30 or 8:00, Bell returned to the Augusta Market.  He was discussing the earlier incident with appellant's father when appellant pulled up to the store.  According to Bell, appellant got out of his car and began running toward him while trying to cock his shotgun.  Bell stated that his car was running, so he got in and threw it in reverse.  He was backing down the street when appellant fired the shotgun and hit his windshield.  Appellant then drove away and Bell went back in the store to call 911.  Bell was not injured as a result of the shooting.
>
> Officers who inspected Bell's car testified that the shooting shattered the windshield and left a pattern on the glass consistent with shotgun pellets hitting it.

*State v. Brooks*, 2004 Ohio App. LEXIS 2894, 2004-Ohio-3216, ¶¶2-4 (Ohio Ct. App., Jun. 15, 2004).

### III.  Procedural Default

In her Supplemental Answer, filed in response to this Court's order, Respondent, for the first time, asserts that Brooks's claim is procedurally defaulted.  (Doc. No. 19.)  Brooks's Supplemental Response does not address Respondent's procedural default argument.  (Doc. No. 20.)

The presence of a procedurally defaulted claim does not deprive a federal court of jurisdiction. *See, e.g., Trest v. Cain*, 522 U.S. 87, 89 (1997). Instead, "procedural default is normally a 'defense' that the State is 'obligated to raise' and 'preserve' if it is not to 'lose the right to assert the defense thereafter.'" *Id*. (*quoting Gray v. Netherland*, 518 U.S. 152, 165-66 (1996)). "Further, although federal courts are not prohibited from raising procedural default *sua sponte*, the practice is frowned upon and federal courts should employ it sparingly." *See Stojetz v. Ishee*, 2006 U.S. Dist. LEXIS 8355 at *8 (S.D. Ohio Feb. 10, 2006) (*citing Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005)); *cf. Flood v. Phillips*, 90 Fed. Appx. 108, 114 (6th Cir. 2004) ("We agree with the several of our sister circuits that appellate courts should not embrace *sua sponte* raising of procedural default issues as a matter of course.")

The Sixth Circuit has observed that a respondent is "required to assert procedural default as an affirmative defense in its responsive pleading." *Flood*, 90 Fed. Appx. at 114; *accord Hargrove v. Haviland*, 2005 U.S. Dist. LEXIS 11013 (S.D. Ohio June 7, 2005) (finding that the Respondent waived the affirmative defense of procedural default where it was raised for the first time in a Report and Recommendation.); *see also Oakes v. United States*, 400 F.3d 92, 96 (1st Cir. 2005)("[P]rocedural default is an affirmative defense and ... the government may lose the defense by neglecting to raise it in a response to a habeas petition.")[4]

Here, Respondent did not raise the affirmative defense of procedural default in her original Answer/Return of Writ. (Doc. No. 15.) The issue was first raised, however, in

---

[4] According to Rule 5(b) of the Rules Governing Section 2254 Cases in the United States District Courts, a respondent's answer "must state whether any claim in the petition is barred by a failure to exhaust state remedies, a procedural bar, non-retroactivity, or a statute of limitations.

7

Respondent's Supplemental Answer, filed only after the Court *ordered* further briefing on the merits of Brooks's claims. Moreover, in its order, the Court did *not* invite Respondent to raise new defenses, but only to supplement her Answer concerning the merits.[5]

Because Respondent did not raise the affirmative defense of procedural default in her original Answer/Return of Writ, the Court recommends that Respondent's procedural default defense be deemed waived. Furthermore, based on the prior decisions of this Court, Respondent's argument appears to be without merit. *See, e.g., Cvijetinovic v. Eberlin*, 2008 U.S. Dist. LEXIS 26483 (N.D. Ohio Mar. 31, 2008) ) (O'Malley, J.) (rejecting the argument that petitioner should have raised a *Blakely* argument on direct appeal because the legal basis of the claim was presaged by *Apprendi* and finding that the *Blakely* decision provided cause sufficient to excuse the petitioner's procedural default); *Davis v. Eberlin*, 2008 U.S. Dist. LEXIS 16012 (Mar. 3, 2008) (Lioi, J.) (finding that a petitioner, who raised a *Blakely* claim before the Ohio Supreme Court but not the state appellate court, demonstrated sufficient cause to excuse his procedural default where the *Blakely* decision was issued after the state appellate court's denial of his direct appeal); *Noland v. Hurley*, 523 F. Supp. 2d 659, 668 (S.D. Ohio 2007) (Abel, J.) (noting that "although the Ohio Supreme Court ordinarily does not entertain claims not raised in the appellate court below ... *Blakely* has apparently created an exception to this rule") (citations omitted); *Charlton v. Beightler*, 2007 U.S. Dist. LEXIS 95132 (N.D. Ohio Nov. 13, 2007) (Limbert, M.J.) ("procedural default does not apply because the ... test, whether the state courts actually enforced the state procedural sanction, has not been satisfied when the Ohio Supreme

---

[5] The Court's order of May 20, 2008 also directed Respondent to file a complete docket so the Court could evaluate certain discrepancies in the procedural history. (Doc. No. 16.)

8

Court has regularly remanded similar cases for resentencing even if the sentence was imposed following *Blakely*.")

### IV.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir.2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law."  *Ruimveld*, 404 F.3d at 1010, *quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir.2002).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Id.* at 413.  By contrast, a state court's decision involves an

9

unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th 2006), *citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998).

**A.      Grounds One and Two: Sixth Amendment Right to Jury Trial**

The Court construes Brooks's claim as a *Blakely* claim challenging the imposition of a sentence based on facts not found by a jury. "The allegations of a *pro se* habeas petition, 'though vague and conclusory, are entitled to a liberal construction.'" *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) (citations omitted) ("The appropriate liberal construction requires active interpretation in some cases to construe a *pro se* petition 'to encompass any allegation stating federal relief.'"); *accord Swain v. United States*, 155 Fed. Appx. 827, 830 (6th Cir. 2005). The Ohio Supreme Court did not articulate its reasoning for rejecting Brooks's appeal other than the customary language indicating that no substantial constitutional question was presented. (Doc. No. 14, Exh. 9.) As such, this Court reviews Brooks's claim *de novo*. *See Granger v. Hurt*, 215 Fed. Appx. 485, 489 (6th Cir. 2007) ("Ordinarily, if a state court does not articulate its reasoning for ruling, the federal court must conduct an independent review of the record to

determine whether the state court decision is contrary to the dictates of 28 U.S.C. § 2254.") (citations omitted).

Brooks received a maximum sentence of eight years for his second degree felonious assault conviction. *Brooks*, 2004-Ohio-3216 at ¶30.  Brooks believes that any sentence beyond the statutory minimum violates *Blakely*.  Indeed, in *State v. Foster*, the Ohio Supreme Court addressed the constitutionality of several sentencing statutes, including the statutes under which Brooks was sentenced.  845 N.E.2d 470, 109 Ohio St.3d 1, 2006 Ohio-856 at ¶28 (Ohio 2006). In light of the United States Supreme Court's decision in *Blakely*, the Ohio Supreme Court found that portions of the Ohio sentencing statutes violated the federal constitution because sentences were based on additional judicial findings neither admitted by a defendant nor found by a jury. *Id*. at ¶¶61, 67.  Under pre-*Foster* Ohio law, a sentencing court was required to make a finding that an offender committed the "worst forms of the offense" *or* posed "the greatest likelihood of committing future crimes" before imposing the longest prison term authorized for the offense. *See* O.R.C. § 2929.14(C).  These specific provisions, along with several others, were found to be unconstitutional by the *Foster* court.

Despite the significant impact of *Foster* on Ohio's sentencing laws, its holding explicitly limited its retroactive effect to cases on direct appeal as of the date of the opinion.  Brooks's sentence became final over a year before the *Foster* decision.  Although *Foster* is inapplicable, Brooks's sentence remains subject to review under the Supreme Court's holding in *Blakely*, as it was on direct appeal when *Blakely* was decided.  *See, e.g., Davis*, 2008 U.S. Dist. LEXIS 16012 at *20 (citing *Perry v. Money*, 2007 U.S. Dist. LEXIS 55342 (N.D. Ohio Jul. 31, 2007))

The trial court made the following statement during sentencing:

I listened to the trial and learned the facts of this case to be that defendant walked up to the victim's automobile and fired a sawed off shotgun into the driver's side windshield while the victim was sitting in that position behind the wheel, and it appears to the Court in an obvious attempt to kill the victim.  The pellets from the sawed off shotgun blast shattered the victim's windshield and the defendant was observed by several people in the area, one of whom was a, if I recall correctly, a truck driver who didn't even know any of these people, a store owner who didn't want to come in and testify and another lady who lives in the neighborhood.

The defendant possesses a significant prior juvenile record and then [an] adult criminal record that begins in 1977, one page full of records in the seventies and in the early eighties, another page of a record and then mid and late eighties another page of criminal offenses ending and then early nineties you had another full page of criminal offenses and in the middle nineties another full page of criminal offenses, and these seem to proceed in their degree of seriousness. Here's another page of criminal offenses in the mid nineties.  In the late nineties I have another page of criminal offenses, and at the turn of the century yet another page of criminal offenses until we arrive at the instant offense, felonious assault with a firearm spec[ification].  The defendant apparently has previously served time in the penitentiary.  He's a multistate offender, committed crimes in Chicago Heights, St. Petersburg, Florida, obviously Youngstown, Ohio.

The Court is required to consider the purposes and principles of sentencing under [O.R.C.] 2929.11, those being to punish the offender and protect the public from future crime by this offender and others.

***

Court further needs to consider the need for incapacitation, deterrence, rehabilitation and restitution and make the sentence commensurate and not demeaning to the seriousness of the offender's conduct, its impact on the victim and it must be consistent with sentences for similar crimes by similar offenders.

Court considers the seriousness factors under [O.R.C.] 2929.12(B), any other relevant factor indicating the conduct is more serious.  The Court finds that the defendant's conduct in this case is as serious a conduct as anyone can engage in, arming himself, planning to go and shoot someone because of a domestic disagreement or because of some rivalry over the affections of a woman, walking down the street in broad daylight and walking up to this guy's car and pulling the trigger of a sawed off shotgun.  Although those things aren't listed as more serious factors, I'm going to throw them in.  There's nothing that makes this less serious in the view of the Court.  Factors indicating recidivism is more likely. The offender has a history of criminal convictions, juvenile delinquency adjudications.  He has not responded favorably to sanctions previously imposed.

12

> He shows no remorse whatsoever. There is absolutely nothing to indicate that recidivism is less likely. This is a felony of the second degree so there is a presumption of a prison term.
>
> To rebut the presumption the Court must find that the nonprison sanction would both adequately protect the public and punish the offender. I can't make that finding. A nonprison sanction would not demean the seriousness of the offense – I can't make that finding either. So the Court will impose a prison sanction. The shortest term is to be imposed if the defendant has not been sentenced to prison before. Well, he has been. The longest term can be imposed only if one of the following is found: The offender committed the worst form of the offense, the offender poses the greatest likelihood of committing future crimes. The Court finds both.

(Doc. No. 14, Exh. 29 at 11-15.)

Respondent contends that Brooks's sentence did not violate *Blakely* because the sentencing court imposed a maximum sentence based on Brooks's prior convictions. (Doc. No. 19.) Respondent's statement of the law is correct. "Other than the fact of a *prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in [the Jones] case: 'It is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.'" *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (quoting *Jones v. United States*, 526 U.S. 227, 252-253 (1999)); *accord Blakely*, 542 U.S. at 301.

The trial court made extensive reference to Brooks's considerable criminal record and remarked that "[t]he shortest term is to be imposed if the defendant has not been sentenced to prison before. Well, he has been." (Doc. No. 14, Exh. 29 at 15.) Had Brooks's sentence been

based solely on his serving a prior prison term, the trial court's findings would not have violated *Blakely*. *See Shahan v. Jeffries*, 2007 U.S. Dist. LEXIS 17827 at *26 (S.D. Ohio Feb. 20, 2007) (finding that the trial court's sentence of more than the minium term did not violate *Blakely* where it was based on petitioner previously having served a prison term, but that the imposition of consecutive sentences required additional findings that ran afoul of *Blakely*). However, the trial court also found that Brooks committed the worst form of the offense *and* that Brooks posed the greatest likelihood of committing future crimes. (Doc. No. 14, Exh. 29 at 15.)

Respondent asserts that these findings did not constitute impermissible judicial fact-finding because they too were based on Brooks's criminal record. Respondent's argument is not well taken. Before making the required determination that Brooks committed the worst form of the offense *and* that Brooks posed the greatest likelihood of committing future crimes, the trial court discussed a litany of factors, quoted above, that it considered. *Id*. The trial court made at least two judicial findings of fact that were not submitted to and found by the jury. First, the trial court stated that Brooks made an "obvious attempt to kill the victim." *Id*. Brooks, however, was neither charged with nor convicted of attempted murder. He was convicted of felonious assault. No showing of an attempt to kill was required. *See* O.R.C. § 2903.11. Thus, the jury never made such a finding. While the trial court's finding – that Brooks attempted to kill the victim when he fired a sawed-off shotgun towards him – may be an inherently reasonable determination, it is, nonetheless, a factual finding that was not admitted, stipulated to, or made by the jury. Second, the trial court also found that Brooks showed no remorse for his crime. This finding of a lack of remorse from Brooks also amounts to impermissible judicial fact-finding. *See Perry v. Money*, 2007 U.S. Dist. LEXIS 55342 at *32 (N.D. Ohio Jul. 31, 2007)

(Zouhary, J.) (finding that while the consideration of a petitioner's prior prison terms did not violate *Blakely*, the trial court's impermissible finding that the petitioner showed no remorse did constitute impermissible fact-finding). Therefore, the trial court's finding – that Brooks committed the worst form of the offense and posed the greatest likelihood of committing future crimes – was based, at least in part, on these aforementioned impermissible judicial findings of fact, thereby violating Brooks's right to a jury trial under the Sixth Amendment.

Respondent argues that the even if Brooks's sentence resulted in constitutional error, such error was harmless. (Doc. No. 19.) It is well established that the commission of a constitutional error at trial alone does not entitle a defendant to automatic reversal, as constitutional errors may, in many cases, be harmless. *See, e.g., Washington v. Recuenco*, 548 U.S. 212, 218 (2006) ("Only in rare cases has this Court held that an error is structural, and thus requires automatic reversal.") (citations omitted). The Sixth Circuit construes an error to be harmless if "none of the defendant's substantial rights have been affected by the error." *United States v. Oliver*, 397 F.3d 369, 381 (6th Cir. 2005). "Under the harmless error test, a remand for an error at sentencing is required unless we are certain that any such error was harmless -- *i.e.* any such error 'did not affect the district court's selection of the sentence imposed.'" *United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005) (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992)).

While federal district courts in Ohio have taken different positions on the question, the prevailing view is that a *Blakely* violation is not harmless as the trial court could impose a different sentence on remand.

> [B]ecause more than one outcome is possible upon re-sentencing, basing harmlessness on an assumed certainty is flawed. It converts the concept of

15

>harmless error in this context into a doctrine of always harmless error. Such conversion is especially dangerous when, as here, the possibility of a different sentence must logically preclude any habeas court from saying for a certainty that the error is harmless.

*Villa-Garcia v. Warden, Noble Corr. Inst.*, 2007 U.S. Dist. LEXIS 23796 at **12-13 (S.D. Ohio Mar. 30, 2007) (Frost, J.); *accord Cvijetinovic*, 2008 U.S. Dist. LEXIS 26483 at *70; *Smith v. Petkovich*, 2008 U.S. Dist. LEXIS 39283 (N.D. Ohio May 12, 2008); *Davis*, 2008 U.S. Dist. LEXIS 16012 at *27; *see also Crotts v. Bradshaw*, 2007 U.S. Dist. LEXIS 79044, 45-46 (N.D. Ohio Oct. 24, 2007) (Gwin, J.) ("While the state sentencing court may impose the same sentence, it also may choose to impose a different one, as such the Court does not find the error harmless.")

### IV. Conclusion

This Court cannot conclude that the sentencing error was harmless even though *Foster* created flexible rules that allow a trial court to sentence anywhere within the statutory range. Consequently, the undersigned recommends that Brooks's petition for a writ of habeas corpus be conditionally GRANTED on his claim that he was improperly sentenced, that his sentence be VACATED, and that his release be ordered unless the State of Ohio re-sentences him within ninety (90) days from the time the Court's decision becomes final.

s/ *Greg White*
U.S. Magistrate Judge

Date: September 8, 2008

## **OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**