# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| JEROME T. BROOKS, | ) | CASE NO. 4:07CV2162 |
| | ) | |
| PETITIONER, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| MICHELE EBERLIN, Warden, | ) | |
| | ) | |
| RESPONDENT. | ) | |
| | ) | |

Before the Court is the Report and Recommendation ("R&R") of Magistrate Judge Greg White. (Doc. No. 21.) Respondent filed objections to the R&R (Doc. No. 26) and petitioner filed a response to those objections (Doc. No. 28). For the reasons set forth below, the R&R is **ACCEPTED IN PART AND REJECTED IN PART** and petitioner's application for a writ of habeas corpus is **DENIED**.

## I. INTRODUCTION

On July 18, 2007, Jerome Brooks ("Brooks" or "petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of his state court sentence of eight years on a felonious assault charge with an additional three years for a firearm specification, to be served consecutively. The Court referred the matter to a Magistrate Judge for the preparation of an R&R.[1] The Magistrate Judge submitted his R&R on September 8,

---

[1] The case was originally referred to Magistrate Judge David Perelman, but was later transferred to Magistrate Judge White pursuant to General Order 2008-06.

2008. He concluded that respondent's affirmative defense of procedural default was waived because it had not been raised in the Answer/Return of Writ and that, in any event, the defense has no merit. He further recommended that, because the trial judge made factual findings during the course of sentencing in violation of *Blakely v. Washington*, 542 U.S. 296 (2004), the petition for writ of habeas corpus should be conditionally granted, petitioner's sentence vacated, and his release ordered unless the State of Ohio re-sentences him within ninety (90) days from the time this Court's decision becomes final.

Respondent filed three objections to the R&R: (1) there was no *Blakely* violation because the sentence was based on petitioner's prior record; (2) if there was a sentencing error, it was harmless; and (3) the *Blakely* claim is procedurally defaulted and not waived.

Petitioner filed a response to respondent's objections arguing, predictably, that the Magistrate Judge's recommendations are legally correct.

## II. BACKGROUND

Neither party objected to the procedural history in the R&R. Therefore, the Court accepts that history as true and correct. *See* R&R, Doc. No. 21, at 2-5.

The underlying facts, as found by the state appellate court, are quoted here to provide context to this decision.

> During the afternoon of August 9, 2002, Robert Bell went to the Augusta Market in Youngstown with his ex-wife. While he was there, he ran into appellant. Bell and appellant were acquaintances and both frequented the Augusta Market. Appellant told Bell to tell his ex-girlfriend, Tomika Gulley, that he wanted to see his baby. Specifically, appellant told Bell, " 'Tell that bitch I want to see my baby.' " (Tr. 24). Apparently, Bell and Miss Gulley had been spending some time together. Appellant and Bell exchanged words. While Bell was outside in his car, appellant pulled up to the side of Bell's car and showed him a sawed-off shotgun. Appellant then repeated, "You hear what I said? I told you, 'Tell that bitch I want to see my baby.' " (Tr. 24-25). Bell told appellant he

2

> better leave. Appellant then drove away and Bell followed after him. However, Bell's ex-wife told him she did not have time for these antics, so he stopped following appellant.
>
> Later that day, around 7:30 or 8:00, Bell returned to the Augusta Market. He was discussing the earlier incident with appellant's father when appellant pulled up to the store. According to Bell, appellant got out of his car and began running toward him while trying to cock his shotgun. Bell stated that his car was running, so he got in and threw it in reverse. He was backing down the street when appellant fired the shotgun and hit his windshield. Appellant then drove away and Bell went back in the store to call 911. Bell was not injured as a result of the shooting.
>
> Officers who inspected Bell's car testified that the shooting shattered the windshield and left a pattern on the glass consistent with shotgun pellets hitting it.
>
> A Mahoning County grand jury indicted appellant on one count of felonious assault, a second-degree felony in violation of R.C. 2903.11(A)(2)(D), with a firearm specification in violation of R.C. 2941.145(A). Appellant proceeded to a jury trial on November 12, 2002. The jury found appellant guilty as charged. The trial court entered judgment on the verdict and sentenced appellant to eight years for the felonious assault conviction and three years for the firearm specification to be served consecutively. [. . .]

(Return of Writ, Exh. 6, Doc. No. 14-2, at 60-61.)

The trial court made the following statement during sentencing:

> [. . .] I listened to a trial and learned the facts of this case to be that this defendant walked up to the victim's automobile and fired a sawed off shotgun into the driver's side windshield while the victim was sitting in that position behind the wheel, and it appears to the Court in an obvious attempt to kill the victim. The pellets from the sawed off shotgun blast shattered the victim's windshield and the defendant was observed by several people in the area, one of whom was a, if I recall correctly, a truck driver who didn't even know any of these people, a store owner who didn't want to come in and testify and another lady who lives in the neighborhood.
>
> The defendant possesses a significant prior juvenile record and then adult criminal record that begins in 1977, one page full of records in the seventies and in the early eighties, another page of a record and then mid and late eighties another page of criminal offenses ending and then

early nineties you had another full page of criminal offenses and in the middle nineties another full page of criminal offenses, and these seem to proceed in their degree of seriousness. Here's another page of criminal offenses in the mid nineties. In the late nineties I have another page of criminal offenses, and at the turn of the century yet another page of criminal offenses until we arrive at the instant offense, felonious assault with a firearm spec[ification]. The defendant apparently has previously served time in the penitentiary. He's a multistate offender, committed crimes in Chicago Heights, St. Petersburg, Florida, obviously Youngstown, Ohio.

The Court is required to consider the purposes and principles of sentencing under 2929.11, those being to punish the offender and protect the public from future crime by this offender and others. Where is the victim, by the way?

**Ms. Calabrese:** Your Honor, I believe that the victim was notified of today's hearing and he is not present.

**The Court:** Court further needs to consider the need for incapacitation, deterrence, rehabilitation and restitution and make the sentence commensurate and not demeaning to the seriousness of the offender's conduct, its impact on the victim and it must be consistent with sentences for similar crimes by similar offenders.

Court considers the seriousness factors under 2929.12(B), any other relevant factor indicating the conduct is more serious. The Court finds that the defendant's conduct in this case is as serious a conduct as anyone can engage in, arming himself, planning to go out and shoot someone because of a domestic disagreement or because of some rivalry over the affections of a woman, walking down the street in the middle of broad daylight and walking up to this guy's car and pulling the trigger of a sawed off shotgun. Although those things aren't listed as more serious factors, I'm going to throw them in. There's nothing that makes less serious in the view of this Court. Factors indicating recidivism is more likely. The offender has a history of criminal convictions, juvenile delinquency adjudications. He has not responded favorably to sanctions previously imposed. He shows no remorse whatsoever. There is absolutely nothing to indicate that recidivism is less likely. This is a felony of the second degree so there is a presumption in favor of a prison term.

To rebut the presumption the Court must find that the nonprison sanction would both adequately protect the public and punish the offender. I can't make that finding. A nonprison sanction would not demean the seriousness of the offense -- I can't make that finding either. So the Court

> will impose a prison sanction. The shortest term is to be imposed if the defendant has not been sentenced to prison before. Well, he has been. The longest term can be imposed only if one of the following is found: The offender committed the worst form of the offense, the offender poses the greatest likelihood of committing future crimes. The Court finds both.

(Return of Writ, Exh. 29, Doc. No. 14-2, at 207-211.)

In his petition for writ of habeas corpus, petitioner asserts that it was error for the trial court to sentence him to more than the minimum sentence after relying on factual findings not made by the jury.

### III. DISCUSSION

**A.      Standard of Review**

Under Rule 72(b)(3), the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." The court may "accept, reject, or modify the recommended disposition[.]" Proper objections are filed within 10 days of service of the R&R and must be specific in nature.

**B.      De Novo Review**

**Objection 3 - The *Blakely* claim is procedurally defaulted**

Respondent has argued that any *Blakely* claim is procedurally defaulted because petitioner failed to raise it in his direct appeal. The Magistrate Judge refused to consider this argument, finding it waived since it was not raised in the original return but was raised for the first time in the supplemental answer which the Magistrate Judge had directed the respondent to file.

The Magistrate Judge also concluded that, were the argument to be considered, it would fail because Exhibit 7 to the original answer (Doc. No. 14-2 at 51) shows that petitioner did raise a *Blakely* claim when he filed his jurisdictional brief with the Ohio Supreme Court on

5

July 29, 2004, a fact which respondent concedes. (*See* Doc. No. 19 at 3-4.) Respondent also concedes that petitioner could not have made a *Blakely* argument before the state appellate court because that portion of his appeal was concluded before *Blakely* was decided. (*Id.* at 14.) Even so, respondent asserts that since *Blakely* is an extension of *Apprendi*, which was decided in 2000, petitioner should have raised a "*Blakely*-type claim" by raising an *Apprendi* argument on direct appeal. Since petitioner did not raise an *Apprendi* argument, respondent asserts that he was procedurally defaulted from raising *Blakely* before the Ohio Supreme Court.

Respondent never made any of these *Blakely*-as-an-extension-of-*Apprendi* arguments before the state courts. It was not raised in the Appellee's Brief filed before the Seventh District Court of Appeals (*see* Doc. No. 14-2, at 19), nor in the Memorandum in Opposition to Jurisdiction filed in the Ohio Supreme Court (*see id*. at 70).

Upon *de novo* review of the respondent's objection to the R&R's conclusion that the defense of procedural default was waived as it relates to petitioner's *Blakely* argument, the Court finds no error and therefore **ACCEPTS** that conclusion.

### Objection 1 - There was no *Blakely* violation

Respondent argues that the sentence imposed by the trial judge was based on petitioner's prior record and, therefore, did not run afoul of *Blakely*, which held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *Blakely*, 542 U.S. at 301.

Petitioner was convicted of felonious assault, a felony of the second degree, along with a firearm specification. The range of prison terms available to the judge was from two to

eight years, plus a mandatory three-year consecutive term for the firearm. O.R.C. § 2929.14(A)(2); § 2929.14(D)(1)(a)(ii) and (E)(1)(a). The court imposed the maximum sentence of eight years, which implicated O.R.C. § 2929.14(C), which provides, in relevant part:

> [T]he court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat offenders in accordance with division (D)(2) of this section.

The Magistrate Judge concluded that the trial court went beyond imposing the maximum sentence based merely on his prior record. He concluded that the trial court violated *Blakely* by making at least two additional findings: (1) that petitioner made "an obvious attempt to kill the victim" and (2) that he showed no remorse.

Respondent argues that the court imposed the eight-year sentence after finding that petitioner had committed the worst form of the offense and that he posed the greatest likelihood of committing future crimes.[2] She further argues that, because an "attempt to kill the victim" is an element of the crime for which petitioner was indicted and convicted, that "finding" by the trial court was superfluous and should not be considered. As for the finding of lack of remorse, the respondent argues that it was simply one factor the court considered in determining whether petitioner posed the greatest likelihood of committing future crimes. In respondent's view, this finding was also superfluous because the sentencing court's consideration of petitioner's criminal history and his failure to respond favorably to previously-imposed sanctions

---

[2] In order to determine that he posed a likelihood of committing future crimes, the trial court could consider the offender's history of prior convictions and/or the fact that he had not responded favorably to sanctions previously imposed for criminal convictions. *See* O.R.C. § 2929.12(D)(2), (3) and (5).

were sufficient by themselves to support its finding that petitioner posed the greatest likelihood of committing future crimes.

The Court agrees with the respondent on this issue. The Supreme Court itself has stressed the importance of allowing a sentencing judge to consider the actual conduct of a particular defendant to ensure uniformity between "sentences and real conduct[. . .]." *United States v. Booker*, 543 U.S. 220, 254 (2005). The *Booker* Court warned that to rule otherwise would "weaken the ties between a sentence and the offender's real conduct. It would thereby undermine the sentencing statute's basic aim of ensuring similar sentences for those who have committed similar crimes in similar ways." *Id*. at 253.

Accordingly, to the extent the R&R concludes that there was a *Blakely* violation, this Court **REJECTS** the R&R.

**Objection 2 - If the sentencing court erred, it was harmless error**

Respondent argues, finally, that even if there were a *Blakely* error, it was harmless.

In federal habeas review, the test for harmless error is whether the error had a "substantial and injurious effect" on the outcome. *Fry v. Pliler*, -- U.S. --, 127 S.Ct. 2321, 2325 (2007).[3] The Sixth Circuit has recently denied a certificate of appealability, in part, because "any *Blakely* error that may have occurred was harmless in light of *State v. Foster*, 845 N.E.2d 470, 498 (Ohio 2006), which held that judicial fact-finding is no longer required before the imposition of maximum sentences or consecutive prison terms." *Brown v. Moore*, No. 08-3289, slip op. at 2

---

[3] This is a more lenient standard than the "harmless beyond a reasonable doubt" standard that applies on direct review. *Fry*, 127 S.Ct. at 2325.

(6th Cir. Sept. 19, 2008); *see also Smith v. Moore*, No. 3:07CV1121, 2008 WL 3890009, at *2 (N.D. Ohio Aug. 19, 2008) [same].

Here the maximum sentence could be imposed even if this Court were to order re-sentencing especially given the wide discretion that the sentencing court now has under *Foster*. There is no reason to believe a sentencing court would give a lesser sentence if the writ were granted. Therefore, this Court is persuaded that, if there was a *Blakely* error, it was harmless.

## IV. CONCLUSION

For the reasons discussed above, the Court **ACCEPTS** the R&R to the extent it refused to consider respondent's argument that any *Blakely* claim was waived by the petitioner, but **REJECTS** it to the extent it found a *Blakely* violation which would warrant granting the writ. Further, the Court concludes that, if there were a *Blakely* error, it was harmless.

Petitioner's application for a writ of habeas corpus is **DENIED**.

**IT IS SO ORDERED**.


Dated: December 31, 2008

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**